**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

David Levoyd Reed,

      Plaintiff

v.

James Dzurenda et al.,

      Defendants

Case No.: 2:19-cv-00326-JAD-BNW

**Order Granting in Part Motion for Summary Judgment, Overruling Objection, and to Directing Plaintiff to Show Cause Why Unserved Defendants Should Not Be Dismissed**

[ECF Nos. 63, 65, 115]

Pro se plaintiff David Reed sues several correctional officers under 42 U.S.C. § 1983, claiming that an altercation at the High Desert State Prison left him with several staples in his head and a disciplinary charge for battery. Six of those officers move for summary judgment on Reed's claims, arguing that various immunities and procedural bars prohibit his recovery. They add that no genuine dispute exists about his excessive-force claim because several officers were not involved in the fight and those that were did not use excessive force. Reed disagrees and provides declarations of other inmates and from himself to support his version of the story.

I grant the defendants' motion in part. I find that Reed has not presented any evidence to support his failure-to-protect claim against officer Henry Grant and that officer Guy Brown and Lieutenant Patrick Moreda relied on sufficient evidence to ensure Reed's due-process rights in his disciplinary hearing. But while the parties agree on much, what they disagree on precludes summary judgment on Reed's remaining claims. I also overrule Reed's objection to the magistrate judge's recent order denying his sanctions motions because he has not presented a valid objection. Given that two defendants remain unserved in this matter, I then order Reed to show cause by September 27, 2021, why the claims against them should not be dismissed

without prejudice for his failure to serve them.  Finally, I refer this matter to the pro bono program to attempt to find counsel for this case.  And I order Reed and the remaining defendants to a settlement conference with the magistrate judge.

## Background

### I.    Factual background

A few winters ago, correctional officer Brandon Stubbs was looking into some allegations that Reed was a member of a gang and had received a couple tattoos while incarcerated in violation of the prison's policy.[1]  So the day after Christmas, Stubbs ordered Reed to speak with him in an office about the allegations.[2]  Reed denied the allegations, but Stubbs persisted and required Reed to remove his shirt so that Stubbs could search for the gang tattoos.[3]  When Stubbs found two permanent markings that he believed confirmed his suspicions, he put Reed in a secure spot so that he and officers Corral-Lagarda and Karsky could search Reed's cell.[4]  That search turned up a couple letters addressed to Reed that used phrases that the officers attributed to the gang.[5]  This much the parties largely agree on.  But according to Reed, that's not all they found, and what happened next is hotly disputed.

---

[1] ECF No. 64 at 8; *see* ECF No. 92 at 4, ¶ 16 (Reed's declaration).  Citations to Reed's response, ECF No. 92, that include a paragraph citation refer to Reed's declaration that is attached to his response.

[2] ECF Nos. 64 at 8; 92 at 4, ¶ 16.

[3] ECF Nos. 64 at 8; 92 at 5, ¶ 16.

[4] ECF No. 64 at 8.

[5] *Id.*; ECF No. 92 at 5, ¶ 16.

### A.    The officers' version

According to the officers, they brought Reed back to the office so that they could take pictures of the tattoos that Stubbs had just found.[6]  But Reed refused, started shouting at them, and let them know that he was ready to fight.[7]  Eventually they'd had enough and Karsky ordered Reed to put his hands on the wall so that he could handcuff him.[8]  Stubbs grabbed Reed so that they could restrain him, but as Reed began to turn around, he acquiesced and said that he would comply with their requests.[9]  But that was a lie, and as soon as Stubbs let Reed go, Reed elbowed Karsky in the stomach and began to swing at the officers.[10]  Fearing that Reed would strike the officers and escape, Corral-Lagarda grabbed Reed by the shirt and put him on the ground where Reed continued to fight.[11]  Soon another officer arrived, and they were able to shackle Reed.[12]  After the fight had deescalated, officers Aaron Dicus and Grant came to help the other officers restrain Reed—Dicus with his hand on Reed's head and Grant holding down Reed's upper body.[13]

At some point, Moreda arrived, and later that day he wrote Reed up for battery and notified him of the charge.[14]  On New Year's Day, Reed pled not guilty to the battery charge at

---

[6] ECF No. 64 at 8.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 8–9.

[10] *Id.* at 9.

[11] *Id.* at 11.

[12] *Id.*

[13] *Id.* at 5, 11.

[14] *Id.* at 6.

his first disciplinary hearing.[15]  During his formal hearing in front of Brown weeks later, Reed testified in his own defense.[16]  But Reed's testimony was insufficient to overcome officer Karsky's report, and Brown found Reed guilty of battery and sentenced him to nearly 200 days in disciplinary segregation.[17]

### B.    Reed's version of events

Reed tells a vastly different story.  He claims that when the officers returned from their search, they flaunted a grievance report that Reed had filed against one of their peers for an incident earlier in the month.[18]  They called Reed a snitch and demanded that he sign a form labeling himself as a gang member.[19]  But Reed contends that he hasn't been affiliated with the gang in years and sought to explain the language within the letters as mere slang.[20]

When Reed refused to do as he was told, Karsky's patience grew thin.[21]  Karsky ordered Reed to put his hands on the wall so Karsky could handcuff him and take him back to his cell.[22] Reed did so, but Karsky flung Reed's head into the wall and provoked him to fight, which "encouraged [Reed] to tell Karsky to do something."[23]  Chaos ensued as Karsky and Stubbs began to pummel Reed—hitting him with a stick, punching, kicking, and stomping on him as he

---

[15] *Id.* at 21.

[16] *Id.* at 23.

[17] *Id.* at 23–25.

[18] ECF No. 92 at 5, ¶ 16.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 5–6, ¶ 17.

[23] *Id.* at 6, ¶ 18.

lay on the ground.[24]  But the attack didn't stop with Karsky and Stubbs.  Soon, Rivera joined in and "punched [Reed] several times."[25]  Reed later learned from other inmates that as the attack continued, Grant stood and watched from outside the office.[26]  When Grant finally entered with Dicus to help hold Reed down, Dicus put his knees on Reed's head as Reed lay there bleeding.[27]  Based on his version of events, Reed maintains that the document prepared by Moreda was inaccurate, leading Brown to wrongly find him guilty of battery.[28]

## II.   Procedural history

Reed initiated this lawsuit against the officers and other Nevada officials, which has whittled down to just four claims against the officers: First Amendment retaliation and Eighth Amendment excessive-force claims against Karsky, Stubbs, Rivera, and Dicus; an Eighth Amendment failure-to-protect claim against Corral-Lagarda and Grant; and a Fourteenth Amendment due-process claim against Moreda and Brown.  Stubbs, Rivera, Dicus, Grant, Moreda, and Brown move for summary judgment, arguing that Reed cannot produce evidence to support his claims and that qualified immunity shields them from liability.  The magistrate judge construed Reed's first response to the summary-judgment motion as a request for more time to file his response and granted it after finding good cause.[29]  Reed now offers his declaration and

---

[24] *Id.*

[25] *Id.* at 6, ¶ 19.

[26] *Id.* at 6, ¶ 18.

[27] *Id.* at 6, ¶ 19.

[28] *Id.* at 7, ¶ 21.

[29] ECF No. 94 at 3–4.  The officers did not object to this order and have thus waived an objection to Reed's later-filed response.  *See* L.R. IB 3-1(a) ("Any party wishing to object to the magistrate judge's order on a pretrial matter must file and serve specific written objections . . . [within] 14 days after service of the order.").

declarations from other inmates who observed the attack from their cells.[30]  And he objects to the

magistrate judge's most recent order denying his motions for sanctions.[31]

**Discussion**

**I.**   **Reed must show cause why his claims against Corral-Lagarda and Karsky should not be dismissed.**

Generally "an incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely

on the U.S. Marshal for service of the summons and complaint."[32]  But that assistance is not

unlimited and comes with an obligation for the plaintiff: to provide the U.S. Marshal the

information needed to help serve a defendant.[33]  Though Reed initiated this case more than two

years ago, Corral-Lagarda and Karsky—who no longer work for the Nevada Department of

Corrections—have not been served with process.

Recognizing Reed's pauper status, Magistrate Judge Brenda Weksler gave him an

additional 60 days to serve the two officers and provided him with the required USM-285 forms

last year.[34]  But when the addresses Reed had yielded unsuccessful results, the magistrate judge

ordered Reed to give the court the information necessary for the U.S. Marshal to serve these

defendants.[35]  In that order, Magistrate Judge Weksler noted that though the U.S. Marshal must

assist Reed in his service efforts, he's still required to give the court the necessary information

---

[30] *See* ECF No. 92 (response).

[31] ECF No. 115.

[32] *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990).

[33] *See id.* (requiring the plaintiff to "provide[] the necessary information to help effectuate service").

[34] ECF No. 31 at 2.

[35] ECF No. 49 at 2–3.

for the U.S. Marshal to do so.[36]  Though Reed objected to that order,[37] he provided updated

information for Karsky only.[38]  When service was unsuccessful yet again, Reed sought a

subpoena for Karsky's information directed at the Nye County Sherriff's Office, where he

believed Karsky most recently worked.[39]  That motion was granted, but its results were

ultimately fruitless—after three tries, the subpoena was returned unexecuted.[40]

     As Reed's filings and the record make clear, he's aware of the tools available to him to

serve these defendants—he filed a subpoena and the court informed him that he could "later seek

to serve Karsky by publication."[41]  Though Reed has not succeeded in his efforts, the record

reflects that Reed has not made any attempt to obtain Karsky's information or use the

appropriate resources to do so since March.  And more troubling, he appears to have all but

given up on locating Corral-Lagarda.  After the magistrate judge ordered him to provide

information for both defendants, he's been silent about his service attempts on Corral-Lagarda.

So I order Reed to show cause in writing why the claims against these defendants should not be

dismissed under Federal Rule of Civil Procedure 4(m) for failure to timely serve them.

## II.     The defendants' motion for summary judgment [ECF No. 63]

     The appearing defendants offer several routes to resolve the claims in this dispute.  I

begin with Reed's claims against Grant, Brown, and Moreda and I grant summary judgment on

those claims.  I then address qualified immunity and find that the underlying factual dispute

---

[36] *Id.* at 2.

[37] ECF No. 49 (objection); ECF No. 112 (order overruling objection).

[38] ECF No. 51.

[39] ECF No. 55.

[40] ECF No. 96.

[41] ECF No. 71 at 4.

precludes resolution of Reed's claims based on qualified immunity at this stage.  Next, I turn to

whether Reed's excessive-force claim is barred by *Heck v. Humphrey*.  Finding that neither

qualified immunity nor *Heck* bar Reed's claims from proceeding to trial, I turn to the substantive

challenges to his claims.

### A.      Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law."[42]  On summary judgment, the court must view all facts and draw all

inferences in the light most favorable to the nonmoving party.[43]  An inference need not be

"necessarily the most likely inference or the most persuasive," as long as it is "rational or

reasonable."[44]  "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from facts are jury functions, not those of a judge."[45]  The purpose of

summary judgment is to avoid unnecessary trials when the facts are undisputed, so summary

judgment is inappropriate when reasonable minds could differ on material facts.[46]

### B.      Reed has not shown that Grant was present to protect him.

The Eighth Amendment protects an inmate from cruel and unusual punishment.[47]  Part of

that protection is a requirement that prison officials "take reasonable measures to guarantee the

---

[42] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[43] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[44] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (quoting *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)).

[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[46] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

[47] *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

safety of inmates."[48]   That includes the notion that a prison official will intervene to prevent

other officers from inflicting cruel and unusual punishment.[49]   To violate this guarantee, a prison

official must forego his ability to intervene and act with "'deliberate indifference' to inmate

health or safety."[50]

The defendants argue that Grant cannot be held liable for failing to intervene because he

wasn't there when the altercation occurred, he merely showed up after Reed was already

restrained.[51]   Reed responds in his declaration that he "was told by" various inmates, some of

whom submitted declarations in support of this dispute, that Grant "was outside the office and

did nothing to stop the attack."[52]   Rule 56 permits a party to oppose a summary-judgment motion

using a declaration, but that declaration "must be made on personal knowledge" and must

contain "facts that would be admissible in evidence."[53]   Even viewing Reed's declaration in the

light most favorable to him, he has failed to demonstrate any evidence to support his failure-to-

protect claim against Grant.   As Reed's declaration makes clear, his claim rests solely on Varrice

Williams's, John Bonner's, and Travis Taylor's claimed observation of Grant during the

incident, not his personal knowledge.[54]   Neither Williams's, Bonner's, nor Taylor's declarations

mention Grant and I cannot reasonably infer from Reed's declaration that he has personal

---

[48] *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

[49] *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (citations omitted).

[50] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted).

[51] ECF No. 63 at 11.

[52] ECF No. 92 at 6, ¶ 18.

[53] Fed. R. Civ. P. 56(c)(4).

[54] *Cf. Cortez v. Skol*, 776 F.3d 1046, 1052 n.6 (9th Cir. 2015) (finding that an inmate presented sufficient evidence to withstand summary judgment, despite relying on the repetition of another's statement because "Plaintiff does not need to rely on the [third party's] account because [he] acknowledged the truth of the statement in his later declaration").

knowledge to testify about Grant's role in the melee.[55]  At best, his statements about what the other inmates told him are inadmissible hearsay.[56]  Because Reed has not met his burden on this claim, I grant summary judgment in Grant's favor and terminate him from this case as no claims remain against him.

### C.      Reed has not demonstrated that his disciplinary hearing violated his due-process rights.

The Supreme Court outlined the procedural requirements necessary to ensure due process "before a prison inmate can be deprived of a protected liberty interest in good[-]time credits"[57] in *Wolff v. McDonnell*.[58]  If a disciplinary hearing could "result in the loss of good[-]time credits," an "inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present" "evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."[59]  A disciplinary hearing satisfies due process so long as "some evidence supports the decision by the prison disciplinary board to revoke good[-]time credits."[60]  This isn't a high bar and "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."[61]

---

[55] *Cf. Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (citation omitted).

[56] *See Cortez*, 776 F.3d at 1052 n.6; Fed. R. Evid. 801(c).

[57] *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985).

[58] *Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974).

[59] *Hill*, 472 U.S. at 454.

[60] *Id.* at 455.

[61] *Id.* (emphasis added).

1    The defendants argue that ample evidence supported their disciplinary decisions because

2    they relied on Karsky's, Stubbs's, and Corral-Lagarda's reports about the incident.  Reed

3    contends that no evidence supported the defendants' disciplinary decision because their reports

4    were false.  Although an allegation of a false discipline report changes the some-evidence

5    standard, it does so only if "a prisoner alleges [that] a correctional officer has falsely accused

6    him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional

7    rights."[62]  Reed's due-process claim at its core does not center on Moreda and Brown falsely

8    accusing him of battery in retaliation for an exercise of his rights.  As the record makes clear,

9    Reed was given notice of the charges well in advance of the hearing.  At that hearing, Reed

10   testified to his version of events and declined the invitation to present his own witnesses.[63]

11   Brown weighed Reed's version against the reports and concluded that the officers' version was

12   more credible.  Even viewing this evidence in the light most favorable to Reed, I cannot

13   conclude that a reasonable juror could find that no evidence supported Brown's decision—even

14   if Reed believes that it's based on fiction.  So I grant summary judgment for Moreda and Brown

15   and against Reed on his due-process claim.[64]  And because there are no outstanding claims

16   against those defendants, I terminate them from this case.

17

18

19

20

21   [62] *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997).

22   [63] ECF No. 64 at 21.

23   [64] Because I grant summary judgment on this basis, I need not and do not consider whether Reed
exhausted this claim under the Prison Litigation Reform Act or whether the defendants are
entitled to qualified immunity on this claim.

### D.     Reed's excessive-force claim presents triable issues.

#### 1.     *Genuine factual disputes preclude summary judgment on qualified immunity.*

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[65]  The Ninth Circuit has explained that "'whether a constitutional right was violated . . . is a question of fact' for the jury, while 'whether the right was clearly established . . . is a question of law' for the judge."[66] To show that conduct violated a clearly established law, the plaintiff must prove that, at the time of the alleged misconduct, "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[67]  But "when there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity."[68]

All defendants contend that qualified immunity shields them from Reed's claims.  But the polar-opposite versions of the fight make it impossible for me to resolve the immunity question on summary judgment.[69]  In the defendants' version, Reed instigated the fight and Stubbs and Karsky merely deescalated the situation before Dicus and Grant, who were not there, came to

---

[65] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[66] *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (alteration in original).

[67] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (quotation and brackets omitted); *see Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

[68] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019), *cert. denied sub nom. Browder v. Nehad*, 141 S. Ct. 235 (2020) (quoting *Morales*, 873 F.3d at 824).

[69] *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991) ("The issue of whether [an officer] is entitled to qualified immunity also cannot be resolved as a matter of law in light of the factual conflict surrounding the circumstances of the shooting.").

12

1   help restrain Reed, and Rivera merely recorded the events.  But Reed offers a series of

2   declarations that show the opposite: he was complying with the officers' orders when Karsky,

3   Stubbs, and Rivera needlessly beat him, and Dicus kneeled on his head.  Which story the jury

4   will believe is the linchpin of the qualified-immunity issue.  Under Reed's version, the

5   defendants likely wouldn't be entitled to qualified immunity on Reed's excessive-force claim:

6   Rivera punched him repeatedly as three officers held him down and beat him, Dicus kneeled on

7   Reed's head while he was already compliant and as he bled profusely, and Stubbs participated in

8   pummeling Reed as he "lay barely conscious" on the ground.  If the officers' story is credited

9   however, it likely wasn't clearly established that using force to restrain a combative Reed is a

10  violated the Eighth Amendment.  Although several aspects of Reed's story are belied by the

11  evidence in the record, and a jury may find it hard to believe, credibility determinations cannot

12  be made on summary judgment.[70]  So these genuine issues of material fact preclude summary

13  judgment on all the defendants' qualified-immunity claims.

14           **2.      *Triable issues of fact exist about whether the force was excessive.***

15           The parties' divergent versions of events also leave genuine issues of fact about whether

16  the force used here was excessive.  The Ninth Circuit has cautioned against granting summary

17  judgment on excessive-force claims because the essential "balancing nearly always requires a

18  jury to sift through disputed factual contentions, and to draw inferences therefrom . . . ."[71]  While

19  courts may consider a variety of factors to determine whether force was excessive,[72] when

20

21  _____

    [70] *Anderson*, 477 U.S. at 255.

22  [71] *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997), *as amended* (Oct. 9, 1997).

23  [72] *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

"material questions exist regarding the circumstances of the [incident]" the court need not consider whether conduct is objectively reasonable.[73]  Reed has produced evidence from which a reasonable jury could find that he was beaten by multiple guards while he was defenseless, a story that is vastly at odds with that of the officers.  Assessing credibility at this point is simply not a job for the court.  So I deny the defendants' motion for summary judgment on Reed's excessive-force claim.

### 3.    Reed's excessive-force claim is not <u>Heck</u>-barred.

The defendants also argue that Reed's success on his excessive-force claim against Karsky would imply that his disciplinary sanction that resulted in a loss of good-time credits was invalid.  So they urge me to find that his excessive-force claim is barred by the U.S. Supreme Court's decision in *Heck v. Humphrey*.[74]  I decline their invitation to do so.  To determine whether a claim is *Heck*-barred, "an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'"[75]  Under the administrative regulation that Reed was disciplined, battery requires proof of "*any* willful use of force or violence upon the person of another."[76]  But to succeed under a theory of excessive force under the Eighth Amendment, Reed must show that Karsky maliciously and sadistically applied force to cause harm and not "in a good-faith effort to maintain or restore discipline."[77] The defendants have not shown that Reed's success on this claim is contingent on him

---

[73] *See Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991).

[74] ECF No. 63 at 12 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

[75] *Cunningham v. Gates*, 312 F.3d 1148, 1153–54 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487).

[76] ECF No. 64 at 34.

[77] *Hudson*, 503 U.S. at 7.

14

demonstrating that he never touched Karsky.[78]  Even if the defendants could demonstrate that *Heck* applies to Reed's excessive-force claim, it would at best preclude his recovery under this claim against Karsky only because Reed's sanction was for elbowing him, not for threatening to hit the other officers.[79]  Karsky has not been served, and the Nevada Attorney General's office does not represent him, so I cannot enter summary judgment in his favor.

### E.  Reed's retaliation claim proceeds against Stubbs only.

Having narrowed Reed's excessive-force claim to just Stubbs, Rivera, and Dicus, I turn to Reed's retaliation claim.  In the prison context, a plaintiff must prove five elements to establish a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[80]

Stubbs argues that his use of force furthered the government interest of quelling Reed when he elbowed Karsky.  But as I explained *supra*, Reed has presented evidence from which a jury could infer that Stubbs initiated his gang investigation and ultimately beat Reed because he knew that Reed had filed a grievance against Stubbs's peer.  As the Ninth Circuit held in *Brodheim v. Cry*, on summary judgment, a plaintiff "need only 'put forth evidence of retaliatory

---

[78] While Reed's theory is that he never touched Karsky, he might still succeed on his excessive-force claim if he proves that, despite touching Karsky, the officer applied more force than reasonably necessary to further his efforts at maintaining peace.

[79] ECF No. 64 at 20–26, 34 (AR 707 defining battery as "any willful use of force or violence upon the person of another"); *see Hill v. Moore*, 19 F. App'x 564, 565 (9th Cir. 2001) (unpublished) (vacating a district court's decision to dismiss an excessive-force action against all defendants when the plaintiff was convicted of battery as to only one defendant).

[80] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

1   motive, that taken in the light most favorable to him, presents a genuine issue of material fact as

2   to [the defendant's] intent."[81]  I find that Reed has met this burden.

3     Stubbs's reliance on a video of Reed after the incident does not change this result.  That

4   video, which captures the moments after the fight, shows Reed laying on the ground, bleeding

5   from his head, repeatedly saying that the officers beat him "for no reason."[82]  As a nurse tends to

6   Reed's wounds, the nurse asks Reed what happened, and Reed repeats that the officers attacked

7   him without cause.[83]  According to the defendants, Reed's answer to the nurse's question

8   forecloses the possibility that they attacked him in retaliation, simply because he does not

9   mention it.  But Reed didn't need to state in that moment that they had retaliated against him to

10  survive summary judgment—his declaration establishes that the officers found his grievance

11  during the search of his cell.  While the video may reduce the likelihood that Dicus was kneeling

12  on him and that Rivera was there in time to punch Reed before he began recording the aftermath,

13  it certainly doesn't put any issue beyond dispute, and Reed will likely offer this video to

14  demonstrate that he was complying with their requests and to show his injuries.

15    But while I find that there are genuinely disputed facts that preclude summary judgment

16  on this retaliation claim against Stubbs, I find that the record does not demonstrate that Dicus or

17  Rivera ever knew about Reed's grievance, leaving Reed unable to demonstrate that they acted

18  with any retaliatory motive.  Though a plaintiff at the summary-judgment stage may rely on

19  timing "as circumstantial evidence of retaliatory intent,"[84] the parties agree that Dicus and Rivera

20

---

21  [81] *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

22  [82] *See, e.g.*, ECF No. 68-1 at 00:30, 00:46.

23  [83] *Id.* at 02:37–40.

[84] *Brodheim*, 584 F.3d at 1271.

16

1   were not present for the initial interview, the search of Reed's cell, or the beginning of the fight.

2   As one inmate declares, Rivera responded to the office "several minutes after the attack."[85]

3   Though it's unclear why Rivera and Dicus responded in the way that Reed claims, Reed has not

4   presented any evidence from which I could infer that they retaliated against him.  So I grant

5   summary judgment in their favor on this claim, which now proceeds against Stubbs only.

6   **III.   Reed's objection to the magistrate judge's order is meritless [ECF No. 115].**

7           Litigation of this case has been nothing short of contentious: the parties have deployed

8   several sanctions motions at one another, and Reed has objected to several of the magistrate

9   judge's orders, accusing her of impropriety.  He reiterates that concern and objects to the

10  magistrate judge's most recent order denying the parties' motions for sanctions, arguing that she

11  "turned a blind eye[] to opposing counsel's misconduct" and "collude[d] with" them.[86]  Reed

12  does not identify any error in the magistrate judge's ruling.  Instead, he uses his objection as

13  another opportunity to argue that the magistrate judge is biased.

14          Reed's allegations are unsupported by anything other than his subjective belief that she's

15  acted partially because she's issued rulings against Reed.  And as I noted in my last order

16  overruling Reed's objections and denying his requests for injunctive relief, Reed's suspicions of

17  bias alone are insufficient to merit recusal.  As the Supreme Court explained in *Liteky v. United*

18  *States*, "judicial rulings alone almost never constitute a basis for a bias or partiality motion."[87]

19

20

21

---

22  [85] ECF No. 92 at 34, ¶ 3.

    [86] ECF No. 115 at 1–2.

23  [87] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384
    U.S. 563, 583 (1966)).

17

Because I am not left with "a definite and firm conviction" that the magistrate judge misapplied the law[88] or made a mistake of fact,[89] I overrule Reed's objection.

### Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 63] is GRANTED in part. This case proceeds on:**

- Reed's First Amendment retaliation claim against Stubbs and Karsky only, and

- Reed's Eighth Amendment excessive-force claim against Stubbs, Karsky, Rivera, and Dicus.

IT IS FURTHER ORDERED that summary judgment is GRANTED

- In favor of Grant on Reed's failure-to-protect claim

- In favor of Moreda and Brown on Reed's due-process claim, and

- In favor of Rivera and Dicus on Reed's retaliation claim.

I further direct the Clerk of Court to TERMINATE Grant, Moreda, and Brown as defendants in this matter as no claims remain against them.

IT IS FURTHER ORDERED that Reed must **SHOW CAUSE by September 27, 2021**, why his claims against Karsky and Corral-Lagarda should not be dismissed for failure to timely serve them. If Reed fails to do so, his claims against Karsky and Corral-Lagarda will be dismissed under FRCP 4(m).

---

[88] *See Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240–41 (9th Cir. 1991).

[89] *Concrete Pipe and Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 623 (1993).

IT IS FURTHER ORDERED that the defendants' unopposed motion for leave to file Reed's medical records under seal **[ECF No. 65] is GRANTED**.  The Clerk of Court is directed to **maintain the seal on ECF No. 66**.

IT IS FURTHER ORDERED that Reed's objection to the magistrate judge's order **[ECF No. 115] is OVERRULED.**

IT IS FURTHER ORDERED that **this case is referred to the Pro Bono Program** adopted in General Order 2016–02 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as counsel for Plaintiff David Reed at no expense to him.  The scope of appointment will be for all purposes through conclusion of trial.  By referring this case to the Pro Bono Program, I am not expressing an opinion on the merits of the case.  The **Clerk of Court** is directed to forward this **order to the Pro Bono Liaison**.

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference**.  The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
August 27, 2021